# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

JUDY POHL O/B/O,
MONIQUE D. CASAUS,

      Plaintiff,

v.                                                                        No. 97cv1373 JP/JHG

KENNETH S. APFEL,
COMMISSIONER OF SOCIAL SECURITY,

      Defendant.

## MAGISTRATE JUDGE'S AMENDED PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

      1.      This matter comes before the Court upon Plaintiff's (Pohl's) Motion to Reverse or Remand Administrative Decision, filed September 21, 1998. Pohl brings this action on behalf of her granddaughter, Monique D. Casaus (Monique). The Commissioner denied Pohl's application for supplemental security income. Pohl alleges Monique, born February 12, 1992, has been disabled since February 12, 1993, due to depression, anxiety and hyperactivity.

      2.      The Commissioner denied Pohl's application both initially and on reconsideration. After conducting an administrative hearing, the Commissioner's Administrative Law Judge (ALJ) found Monique was not a disabled child within the meaning of the Social Security Act. The Appeals Council denied Pohl's request for review of the ALJ's decision. Hence, the decision of the ALJ became the final decision of the Commissioner for judicial review purposes. Pohl seeks review of the Commissioner's final decision pursuant to 42 U.S.C. §405(g).

      3.      The standard of review in this Social Security appeal is whether the Commissioner's final decision is supported by substantial evidence and whether he applied correct legal standards.

*Hamilton v. Secretary of Health and Human Services,* 961 F.2d 1495, 1497-98 (10th Cir. 1992). Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir. 1994). This Court may not reweigh the evidence or substitute its judgment for that of the ALJ *Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991).

4. Pohl contends the ALJ's findings regarding whether Monique's impairments were medically equivalent to a listed impairment are not supported by substantial evidence, the ALJ's findings regarding whether Monique's impairments were functionally equivalent to a listed impairment are not supported by substantial evidence and the ALJ should have called on the services of a medical advisor.

5. The law in effect at the time the ALJ issued his decision required the decision maker to apply a four step analysis. *See* 42 U.S.C. § 1382c(a)(3)(A) (1994), as implemented by 20 C.F.R. § 416.924(b)(1994). Accordingly, in this case, the ALJ first inquired whether Monique was engaged in substantial gainful activity. 20 C.F.R. § 416.924(c). The ALJ determined she had not, so the analysis proceeded to the second step. At the second step, the ALJ asked whether she suffered from a severe impairment. 20 C.F.R. § 416.924(d). Since the ALJ found she suffered from the severe impairment of disruptive behavioral disorder, inquiry proceeded to the third step. At the third step, the ALJ inquired whether the impairments were medically or functionally equivalent to a listed impairment. 20 C.F.R. § 416.924(e). At the third step, the ALJ determined Monique's impairments did not meet or equal a listing.

6. The analysis thus proceeded to the fourth and final step. At the fourth step, the ALJ performed an individualized functional assessment to determine whether Monique had an impairment

or combination of impairments of comparable severity to that which prevent an adult from engaging in substantial gainful activity. 20 C.F.R. § 416.924(f). The ALJ determined Monique's impairments would not be of comparable severity to an impairment which would disable an adult. Thus, he concluded she was not a disabled child within the meaning of the Social Security Act.

7. After the ALJ issued his decision, Congress enacted the Personal Responsibility and Work Opportunity Reconciliation Act, Pub.L. No. 104-193, 110 Stat. 2105. The Act amended the applicable standard for evaluating children's disability claims, 42 U.S.C. § 1382c(a)(3)(C), to read as follows:

> An individual under the age of 18 shall be considered disabled . . . if that individual has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which has lasted or can be expected to last for a continuous period of not less than 12 months.

8. The amended Act eliminates the fourth step of the analysis. The implementing regulations reflect this change by providing that if the child's impairment or impairments do not meet, medically equal, or functionally equal in severity a listed impairment, the child is not disabled. *See* 20 C.F.R. § 416.924(d)(2) (1997). The new version of the Act applies to all cases which have not been finally adjudicated as of the effective date of August 22, 1996. *Brown v. Callahan*, 120 F.3d 1133, 1135 (10th Cir. 1997). The instant case was not finally adjudicated as of that date. Therefore, the new law applies. In reviewing the Commissioner's decision, it is therefore necessary only to review the first three steps of the analysis. *Id.*

9. The record reveals that Monique's mother was ill during her pregnancy and diagnosed with leukemia soon after Monique was born. Tr. 100. Monique's mother died from leukemia when Monique was 14 months old. Tr. 80. Monique's father was in prison and had no contact with her. Tr.

3

105. Monique lives with Pohl, her maternal grandmother. *Id.* Monique's maternal uncle and great-grandmother have at times lived in the home along with Monique and Pohl. *Id.* All three adults suffer from mental problems. *Id.* Significantly, Monique's great-grandmother believed she spoke to Monique's deceased mother on a daily basis. *Id.*

10. Dr. Reichenbacher, M.D., treated Monique from September, 1995 to February, 1996. Tr. 109-116. Dr. Reichenbacher noted Monique was able to voice her thoughts, and her mood and affect seemed bright. Tr. 115. She seemed to be of average intelligence and to be developing well. *Id.* She did not look depressed. Tr. 113. Dr. Reichenbacher prescribed Ritalin, Dexedrine and Clonidine. Tr. 118. Dr. Reichenbacher diagnosed attention deficit hyperactivity disorder and oppositional defiant disorder. Tr. 112; 115.

11. In June, 1995, Judy Goodnow, a family therapist, evaluated Monique. Tr. 79-81. Monique reported visiting her mother "in heaven." Tr. 80. Ms. Goodnow found this was learned behavior from her great grandmother. Tr. 81. Pohl told Ms. Goodnow that Monique was fearful and felt threatened. *Id.* Ms. Goodnow attributed the fear to the fact that Monique had witnessed Pohl and her uncle fighting. *Id.* Ms. Goodnow diagnosed major depression, oppositional defiant disorder, and adjustment disorder with defiant mood. *Id.*

12. On October 26, 1995, Dr. G. W. Sutton, Ph.D., performed a psychological examination. Tr. 105-108. Dr. Sutton found Monique to be in the low average range of verbal intellectual functioning and in the mildly retarded range in her ability to think and solve problems in nonverbal, abstract and conceptual terms. Tr. 106-107. Dr. Sutton concluded Monique could be expected to perform at a level considerably lower than her peers. *Id.* He also found she was at risk for learning disabilities. *Id.* Dr. Sutton did not find an obvious presentation of a mood disorder. *Id.*

Dr. Sutton diagnosed attention deficit hyperactivity disorder. Tr. 108. He recommended Monique receive medication for her hyperactivity and that Pohl undergo parenting education. *Id.* Dr. Sutton also stated Monique could effectively function in a preschool environment. *Id.* He also suggested she would benefit from work on early number skills and visual-spatial tasks. *Id.*

13. On September 24, 1995, Dr. Julie Kilpatrick, M.D., performed a psychiatric examination. Tr. 98-104. Dr. Kilpatrick noted Monique's play, speech and ability to understand were at least age-appropriate, if not somewhat advanced. Tr. 101. Monique's thought processes were logical, organized and goal directed without any significant preoccupation with fantasy. *Id.* Dr. Kilpatrick diagnosed disruptive behavioral disorder and bereavement. Tr. 102. Dr. Kilpatrick noted Monique did not really meet the full criteria for oppositional defiant disorder. *Id.* Dr. Kilpatrick concluded Monique had significant underlying biological vulnerability toward affective disorders. *Id.* Dr. Kilpatrick noted Monique's oppositionality was within normal range. Tr. 103.

14. On March 28, 1996, Monique was evaluated by Dr. Flammer and Ms. Larin. Tr. 123-125. Pohl reported she was dissatisfied with Dr. Reichenbach's treatment and did not like the idea of putting Monique on medication. Tr. 123-124. Pohl reported Monique had made a good adjustment to preschool. Tr. 124. Monique was demanding, very talkative, easily distracted and had a short attention span. Tr. 124-125. However, she exhibited normal verbal skills and no developmental delays. *Id.* Dr. Flammer and Ms. Larin diagnosed adjustment disorder with mixed emotional features. Tr. 125. They also noted Monique had severe psycho social stressors. *Id.*

15. May 13, 1996, Ms. Joanna Renick, Monique's preschool teacher prepared an assessment. Tr. 121-122. Ms. Renick stated Monique was impulsive and unable to sit still even for a moment. Tr. 121. She also reported Monique was too active, very physical with other children and

was especially afraid of being injured. *Id.* Ms. Renick also noted Monique was lovable, kind and in need of consistency and stability.

16. In support of her motion, Pohl contends the ALJ's findings regarding whether Monique's impairment was medically equivalent to a listed impairment are not supported by substantial evidence. Pohl alleges Monique's impairment is medically equivalent to Listing 112.08, Personality Disorders. In order to be medically equivalent to this listing, a claimant's condition must exhibit pervasive, inflexible and maladaptive personality traits, which are typical of the child's long-term functioning and not limited to discrete episodes of illness. 20 C.F.R. § 404, Subpt.P, App. 1, § 112.08. The requirements of both section A and section B of the listings must be satisfied. *Id.*

17. Pohl contends Monique meets both section A and section B of listing 112.08. However, close scrutiny of the record establishes this is not the case. Pohl contends the section A requirement of "oddities of thought, perception, speech and behavior" are manifested by her masturbation and belief that she visits her mother in heaven. Dr. Kilpatrick interpreted Monique's masturbation as an attempt to soothe herself in the face of a stressful family situation. Tr. 103. In her report, Ms. Renick did not mention masturbation. Tr. 121-122. Pohl told the Lovelace evaluators that the masturbation behavior had decreased a great deal. Tr. 123. Thus, the masturbation was not typical of her long-term functioning and was limited to discrete episodes. Substantial evidence of record support's the ALJ's finding that the masturbation was not an oddity of thought, perception, speech and behavior within the meaning of section A.

18. In addition, Ms. Goodnow surmised Monique's belief that she visited her mother in heaven was learned behavior from her great-grandmother and not an actual hallucination. Tr. 81. Dr. Kilpatrick found in the context of her interview Monique's perception of reality was very good. Tr.

6

103. Dr. Kilpatrick was uncertain as to whether Monique was engaging in imaginary fantasy play or was hallucinating, but she believed this question would be answered when Monique started preschool. *Id.* Ms. Renick did not mention that Monique was hallucinating or talked of visiting her mother in heaven while she was at preschool. Tr. 121-122. Thus, Monique's idea that she visited her mother in heaven was not typical of her long-term functioning and was limited to discrete episodes. Substantial evidence of record supports the ALJ's finding that Monique's belief that she visited her mother in heaven was not an oddity of thought, perception, speech and behavior within the meaning of section A.

19. Pohl alleges Monique satisfies the section B requirements due to her masturbation, lack of toilet training, and deficiencies in concentration, persistence and pace. See 20 C.F.R. § 404, Subpt. P, App. 1, § 112.08 and 112.02(B)(2). Dr. Kilpatrick noted Monique seemed to attend very well, was able to play on her own as well as listen, and that pace was appropriate. Tr. 102. Her concentration was adequate to complete intelligence testing. Tr. 105-108. In October, 1995, Dr. Reichenbacher prescribed medication for Monique's hyperactivity. Tr. 112. In January, 1996, Dr. Reichenbacher noted she was under adequate control. Tr. 119. In February, 1996, a Head Start evaluation performed while she was on her medication found no symptoms of hyperactivity and she showed no signs of depression. Tr. 118.

20. With respect to toilet training, Ms. Goodnow reported Monique had not achieved full toilet training. Dr. Reichenbacher also noted she suffered from enuresis.[1] Pohl testified she had trouble toilet training her. Tr. 140. Ms. Renick did not mention masturbation or toilet training in her

---

[1]. Enuresis is urinary incontinence not due to a physical disorder. Stedman's Medical Dictionary, 579 (26th ed.1995).

assessment. In light of these considerations, substantial evidence of record supports the ALJ's determination that Monique's condition did not satisfy the requirements of section B.

21. Pohl also contends substantial evidence does not support the ALJ's determination that Monique's impairments were not functionally equivalent to the listings. Functional equivalence requires an extreme limitation in one area of functioning, or a marked limitation in two areas of functioning. 20 C.F.R. § 416.926a(c). An extreme limitation means no meaningful functioning in a given area, and a marked limitation is one which seriously interferes with the child's functioning. 20 C.F.R. § 416.926a(c)(3).

22. Pohl argues Monique can be considered to have an extreme limitation in the area of concentration, persistence and pace. She also contends Monique can be considered to have two marked impairments in the form of personal behavior and concentration, persistence and pace. In support of this argument, Pohl refers to her prior discussion as they relate to the question of whether the condition was medically equivalent to the Listing 12.08. Monique's concentration, persistence and pace were not substantially impaired. Moreover, neither the masturbation nor the difficulties in toilet training seriously interfered with her functioning. 20 C.F.R. § 416.926a(c)(3). Substantial evidence supports the ALJ's finding that Monique did not have a marked deficiency in concentration, persistence and pace or a marked limitation in her personal behavior under the functional equivalence standard.

23. Pohl contends the ALJ should have called on the services of a medical advisor. In some cases, if the evidence is ambiguous, a medical advisor must be consulted. *Reid v. Chater*, 71 F.3d 372, 374 (10th Cir. 1995) (onset date). However, in this case the evidence was not ambiguous. Therefore, the ALJ did not need to call on the services of a medical advisor.

**RECOMMENDED DISPOSITION**

The ALJ applied correct legal standards and substantial evidence supports the decision. The motion to reverse or remand administrative agency decision should be denied and this case should be dismissed.

JOE H. GALVAN
UNITED STATES MAGISTRATE JUDGE

**NOTICE**

Within ten days after a party is served with a copy of these amended proposed findings and recommended disposition that party may, pursuant to **28 U.S.C. § 636 (b)(1)**, file written objections to such amended proposed findings and recommended disposition. A party must file any objections within the ten day period allowed if that party wants to have appellate review of the amended proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.